No. 28,497.

Claude Hamilton, *Appellant,* v. R. W. Talbot, A. G. Hazlett, The Center Oil Company, The McCulloch Oil Company, The American National Company (now The American-First Trust Company in Oklahoma City), Frances E. Parrington, Register of Deeds of Lyon County, et al., *Appellees.*

(276 Pac. 808.)

Opinion filed May 4, 1929.

*W. L. Huggins* and *O. T. Atherton,* both of Emporia, for the appellant.

*Gilbert H. Frith, C. V. Beck, W. W. Parker, O. R. Stites,* all of Emporia, *Samuel W. Hayes, D. A. Richardson, A. W. Gilliland* and *Lee G. Gill,* all of Oklahoma City, Okla., for the appellees.

The opinion of the court was delivered by

Harvey, J.: In this action plaintiff alleged that he had guaranteed the payment of a certain note which was secured by a mortgage, and that the mortgagee was about to release the mortgage without requiring payment of the note. The makers and the payee of the note and mortgage were made defendants. Plaintiff sought to have the rights of the parties adjudged to be as alleged, and to enjoin the payee from releasing the mortgage without the payment of the mortgage debt. Issues were joined, there was a trial to the court, judgment was for defendants, and plaintiff has appealed.

The facts disclosed by the record material to be considered here are as follows: The plaintiff, who appears to have been a man of some means, resides at Grand Rapids, Mich. In 1924, at Tulsa, Okla., he became acquainted with R. W. Talbot, C. B. Talbot and A. G. Hazlett, who were engaged in the gas- and oil-production busi-

ness, having, among other properties, two blocks of leases (or contracts for leases) on land in Montgomery county, Kansas, on which they desired to drill for oil and gas. They did not at that time have the money to pay the expense of drilling such wells, nor did they have credit by which they could get the money—at least they did not have such credit at the First National Bank of Tulsa. They discussed this matter with plaintiff, and as a result of such discussion the parties entered into a written contract with respect to one block of leases as follows:

"CONTRACT.

"This indenture, made and entered into on this 3d day of September, 1924, by and between R. W. Talbot, C. B. Talbot, and A. G. Hazlett, hereinafter designated as first parties, and Claude Hamilton, hereinafter designated as second party, witnesseth:

"That whereas, the first named R. W. Talbot is the owner of oil and gas mining leases covering the following-described real estate situated in Montgomery county, Kansas, to wit: (Description of said real estate is here given.) And the said C. B. Talbot and A. G. Hazlett have an interest therein, said leases now being in escrow in the Citizens State Bank of Elk City, Kan., according to the terms of an escrow agreement hereinbefore executed by R. W. Talbot with the fee simple owners of the real estate so described; and

"Whereas, second party desires to purchase a one-eighth (⅛) interest in the said oil and gas mining leases:

"Now, therefore, in consideration of the mutual covenants and agreements herein contained, it is agreed between the parties hereto, as follows:

"First: That the second party simultaneously with the execution of this agreement agrees to and does obtain for the first parties the sum of five thousand dollars ($5,000) in cash, payable six (6) months after date hereof, without interest, according to the tenor of a note of even date herewith executed by the first parties.

"Second: That the said five thousand dollars shall be used for the drilling of a well for oil and gas upon the said real estate so described, by the first parties, the same to be drilled upon a forty (40) acre portion thereof to be designated by first parties, the same to be drilled to the Wilcox sand found at approximately seventeen hundred (1,700) feet.

"Third: That an assignment of an undivided one-eighth (⅛) interest shall be made, executed and delivered by the first parties to the second party covering the said forty-acre tract upon which the said well shall be drilled, immediately upon the moving in of tools and machinery and the commencement of a well upon said premises.

"Fourth: It is further agreed that the first parties shall have the right to sell any or all of the additional acreage heretofore described at such prices as they may see fit, the proceeds from the sale thereof to be used for the payment of the original purchase price for the said leases, to wit: Fifteen dollars ($15) per acre, or an aggregate total of twelve thousand four hundred and fifty dollars ($12,450). It is further agreed that after the said twelve thousand four hundred and fifty dollars shall have been paid by the sale of leases and the

second party shall be reimbursed for the said five thousand dollars, that the first parties shall then make, execute and deliver to him an assignment of an undivided one-eighth (⅛) interest in all leases and moneys derived therefrom in the said contract that shall remain in the hands of the first parties.

"Fifth: It is further agreed that in the event a well is discovered that shall produce oil or gas, or either of them, in paying quantities, that the second party shall pay his *pro rata.* of one-eighth share of the expenses of equipping and operating the said property, including the discovery well and all other wells that may be drilled thereon, or at his option may surrender his one-eighth interest to the first parties.

"Sixth: It is further agreed that first parties will hold the second party harmless from any future or additional expense other than specified in this contract.

"In witness whereof, we have signed this instrument in duplicate, this 3d day of September, 1924.

"R. W. TALBOT,
C. B. TALBOT,
A. G. HAZLETT,
*Parties of the first part.*
CLAUDE HAMILTON,
*Party of the second part.*"

On the execution of this contract plaintiff went to the First National Bank of Tulsa and there, by personally guaranteeing the payment of the loan, made arrangements that the Talbots and Hazlett could borrow $5,000 from the bank. The Talbots and Hazlett executed their note to the bank for $5,000, dated September 3, 1924, due in 120 days, and got the money on the note. The plaintiff did not sign this note, but he did pay the interest on it for the term for which the note was drawn. The Talbots and Hazlett used the money so obtained on this note in drilling the well on the leases described. While drilling this well they sold part of the leases for sums aggregating $6,000. The well came in a dry hole. There is a controversy as to whether the Talbots and Hazlett made the assignment to plaintiff on the forty-acre tract spoken of in paragraph 3 of their contract, but this is not now material. No assignment was made to him of any other portion of the leases.

On September 10, 1924, the same parties entered into another contract with respect to the other block of acreage in Montgomery county. This contract need not be set out. It is identical with the first one, except as to the description of the property, and the amount to be paid for the leases (paragraph 4) was $6,400. It contained a similar provision by which plaintiff agreed to obtain for the Talbots and Hazlett $5,000 to be used in drilling a well on

that lease. Plaintiff made a similar arrangement with the First National Bank of Tulsa with respect to this $5,000, and the Talbots and Hazlett, on September 11, 1924, executed their note to that bank for $5,000 due in 120 days and got the money on it. Plaintiff paid the interest on the note for the time it was to run, but did not sign the note. The well on this block of acreage came in a dry hole, and of this acreage the Talbots and Hazlett sold $1,000 worth while the drilling was going on.

These two $5,000 notes were not paid when due, but were renewed, the makers giving some additional security which proved to be of no value, and plaintiff ultimately had to pay them, which he did about August 1, 1925. Thereafter Hamilton sued the Talbots and Hazlett on these two notes, the suit being brought in Oklahoma.

The Talbots and Hazlett had taken a number of oil and gas leases on land in Lyon county, Kansas, and had organized a corporation—the Center Oil Company—which is described as a family affair, all the stock being owned by the Talbots and Hazlett except a few qualifying shares, to which company these Lyon county leases had been assigned, and they had borrowed from the American National Bank—later reorganized as the American-First Trust Company of Oklahoma City, and hereinafter spoken of as the Trust company—$66,000 secured by a mortgage on their oil and gas holdings in Lyon county, Kansas, and perhaps at other places. This mortgage contained a provision by which it would secure additional indebtedness of the makers to the payee. Plaintiff learned of this situation and took up with the officials of the Trust company the matter of taking up the indebtedness of the Talbots and Hazlett to him in such a way that it would be secured by this mortgage.

As a result of conferences on that subject the Talbots and Hazlett individually, and as officers of the Center Oil Company, executed a new note for $10,946.91, being the amount of the two $5,000 notes which they had given to the First National Bank of Tulsa and which plaintiff had guaranteed and later paid, with the interest that had accrued thereon after the maturity of the first notes given. This note was made payable to the Trust company, and its officers executed an affidavit to the effect that they had extended an additional credit to the Center Oil Company and the Talbots and Hazlett, under their mortgage, to the amount of this note, and that the same was secured by the mortgage previously executed by the makers by virtue of the clause above referred to, which affidavit

was duly filed in the office of the register of deeds of Lyon county, where the mortgage had been previously recorded. When this was done the suit brought in Oklahoma by plaintiff against the Talbots and Hazlett on the two $5,000 notes was dismissed. It is plaintiff's contention in this action that he sold the $10,946.91 note to the Trust company and guaranteed its ultimate payment, and by this action he seeks to require the Trust company to collect it from the mortgaged property, which he alleges is ample for that purpose, and which payment would relieve him of liability on his guarantee to the Trust company.

Some parties intervened, claiming rights under the mortgage, or the property described in it. Numerous pleadings were filed, only a few of which need to be noted. The Talbots, Hazlett and the Center Oil Company alleged, in substance, that the assignment to plaintiff of the undivided one-eighth interest in the forty-acre tract under one contract was of the value of $600, and under the other of $900, and that this amounted to usury under the laws of Oklahoma, for which usury, in a cross petition, they asked judgment; also alleged that they were induced to execute the $10,946.91 note by false representations, in that plaintiff had agreed to refinance them with a much larger loan, which he failed to do, and that by reason thereof there was no consideration for this note. The plaintiff joined issues on these allegations. The trial court took the view that under the contract of September 3, 1924, hereinbefore set out, it was the duty of plaintiff to furnish defendants $5,000 for the assignment of the one-eighth interest of the leases to be made, as therein provided; that plaintiff was to be reimbursed in the event only that enough acreage was sold to pay, first, the original cost of the leases, and then to pay plaintiff.

With this interpretation the court held that there was no consideration for the $5,000 note executed by the Talbots and Hazlett to the First National Bank of Tulsa on September 3. By similar reasoning the court held there was no consideration for the second $5,000 note executed by those parties to the bank on September 11, 1924. Since plaintiff's contention was that these notes formed the consideration for the $10,946.91 note, the court held that note to be without consideration, and the plaintiff was not entitled to any relief. Plaintiff complains of that ruling of the court, first, for the reason that it was not within the issues, and, second, for the reason that it is not supported by the evidence, nor a proper interpretation

of the contract. We think this complaint is well founded. The question was not within the issues. These defendants in their answer had referred to those $5,000 notes as loans, and from their testimony it is clear that they borrowed the money, that plaintiff guaranteed it, that they received the money and used it; and the only defense they pleaded against those notes was the defense of usury. The trial court incorrectly construed the contract. It provided that plaintiff "agrees to and does obtain for the first party the sum of $5,000." The evidence clearly shows how that was to be obtained, and how it was in fact obtained. For furnishing this credit and paying the interest on the sum for a stated time plaintiff was to have an assignment of an undivided one-eighth interest in the forty acres on which the well was being drilled, but if it produced oil or gas in paying quantities he was required to pay his *pro rata* one-eighth share of the expense of equipping and operating the property, including the discovery well, and all other wells that were drilled thereon. Stress is laid on the fourth paragraph, which contained a provision contemplating that the Talbots and Hazlett might sell some of the leases, except the forty acres being drilled upon, and out of the proceeds pay the first cost of the leases and then reimburse plaintiff for the $5,000 he had secured, as indicating the only method for the payment of the $5,000 which plaintiff obtained for them. This does not purport to be the only method of such payment. It provided simply a method for its payment in the sense of security for the payment. Not only the contract itself indicates that, but there is evidence that it was so understood. This error requires a reversal of the case for a new trial. Since the court took the view it did, there was no specific ruling upon other questions raised in the case as between the plaintiff and the defendants, the Talbots and Hazlett, and no other questions concerning these parties need be discussed.

The Trust company first answered to the effect that all of the allegations of plaintiff's petition were true except that it was not threatening or about to release the mortgage without the payment of the note in question. Later it filed an amended answer in which it is contended that it had been induced by plaintiff to file the first answer by his fraud, denied that it ever purchased the note in question from plaintiff, or that it had any right to collect it under its mortgage. The plaintiff replied more in detail as to the manner in which he had guaranteed to the Trust company the payment of

the note, and in this respect alleged, in substance, that he had an agreement with the Trust company by which he would leave with the Trust company a sum of money equal to the amount of the note, to be invested in municipal bonds, or similar security, to be held in escrow by the Trust company for plaintiff, the proceeds, if necessary, to be used in the guarantee of the note; that plaintiff had in fact left with the Trust company $15,000, which the Trust company had, at his direction, invested in bonds for him, and asked more specific relief in that the Trust company be required to bring these bonds into court for plaintiff's use, or to be disposed of as the court might order. The allegations of this reply with respect to the specific manner in which plaintiff had guaranteed the payment of this note to the Trust company were stricken out on the Trust company's motion that they constituted a departure. The trial court held they did constitute a departure and refused to receive evidence concerning them.

Plaintiff complains of this ruling. It was erroneous. The reply simply amplified allegations already made in the petition. It did not change the claim of plaintiff. Perhaps all the evidence offered in respect to that could have been offered under the petition, but there was nothing improper in so specifically pleading the facts. The court excluded evidence offered by plaintiff, much of which constituted correspondence between plaintiff and the Trust company with respect to the manner in which the Trust company took the note in question, the manner in which plaintiff had guaranteed it, and the investments made by the Trust company for plaintiff. We see no reason why any of this evidence should have been excluded. It is true that some of this evidence was not offered on the motion for a new trial, and appellant is not in position to complain of the ruling excluding that; but much of it was documentary and did not have to be so offered in order to predicate error upon the ruling. These matters can be properly handled on a new trial.

The Trust company contends that it should not be compelled to litigate in the courts of a state foreign to its domicile the matter of its financial arrangements or obligation with plaintiff. We see no merit in this contention. It is in court for all purposes. There is no reason why a court of equity, having all the parties before it, should not consider and determine the entire controversy.

The judgment of the court below is reversed for a new trial.